# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:11-cv-115-RJC

| | |
|---|---|
| MONTAVIUS A. JOHNSON-EL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| THEODIS BECK, et. al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Complaint under 42 U.S.C. § 1983. (Doc. No. 1).

A case filed under 42 U.S.C. § 1983 requires a deprivation of a right secured by federal law by a person acting under color of state law. Section 1983 applies to violations of federal constitutional rights, as well as certain limited federal statutory rights. See Maine v. Thibotout, 448 U.S. 1 (1980); see also Gonzaga University v. Doe, 536 U.S. 273, 283 (2002) (holding that a right must be "unambiguously conferred" by a statute to support a Section 1983 claim). Title 28 U.S.C. § 1915A directs the Court to conduct an initial review of civil actions by prisoners seeking relief from a governmental entity or employee and identify cognizable claims or dismiss the complaint, or parts thereof. Plaintiff has filed a number of documents with his Complaint, including those from his grievance proceedings. The Court has considered those in its review.

## I. FACTUAL AND PROCEDURAL HISTORY

The following factual history is taken from the complaint and accompanying documents. On February 24, 2008, while incarcerated at Marion Correctional Institution (hereinafter "MCI"), Plaintiff was ordered to leave the dining hall by Correction Officer Seibert. Plaintiff refused to

comply and was forcibly removed by the officer. On the orders of Defendant (FNU) Davis, Plaintiff was placed in a recreation cage in the segregation unit. Several hours later, Plaintiff was taken to a conference room for a discussion with Defendant Davis. According to Plaintiff, Defendant Davis spoke to him in an "aggressive voice" and told him that he was to comply the next time he was given an order by a corrections officer. Then, according to Plaintiff, Davis held up a penny and told Plaintiff to pick "heads or tails.'" Plaintiff picked heads; Davis flipped the coin, and it landed on "heads." Defendant Davis then tossed the penny in the trash can and "with discrimination" said, "I don't need this anymore." Plaintiff was then taken back to his dorm in general population, and no disciplinary action was taken against him.

Plaintiff contends that Davis used the coin toss to determine whether to place Plaintiff in segregation or to release him back into the general population. He contends further that Davis chose a penny because February is Black History Month, and the penny was a symbolic reference to emancipation. Upon his return to his cell, Plaintiff wrote a confidential letter to Defendant (FNU) Corpenning, seeking an investigation into the dining hall and penny toss incidents. After Corpenning failed to respond, Plaintiff filed a grievance on March 7, 2008, seeking an investigation into the incidents. An investigation was conducted into both the dining hall and penny toss incidents, and the grievance was dismissed for lack of supporting evidence. (Doc. No. 1-1 at 1)..

On or about April 28, 2008, Plaintiff was transferred to Lanesboro Correctional Institute (hereinafter "LCI"). (Doc. No. 1-3). Plaintiff contends that he was transferred in retaliation for his grievance and that as a result of his transfer, he was unable to finish the computer class that he had been taking at MCI.

Plaintiff seeks declaratory relief, as well as monetary damages, against a number of corrections officials involved in the grievance process. He also seeks an injunction requiring the defendants to allow him to complete his computer class at Lanesboro.

## II. DISCUSSION

### A. Dining Hall/Penny Toss Incidents

To the extent that Plaintiff has stated a cognizable § 1983 claim against any of the defendants for either Officer Seibert's actions in the dining hall[1] or Defendant Davis's subsequent actions in the conference room, such claim is time-barred. Although there is no federal statute of limitations for claims brought under § 1983, the federal courts generally apply the relevant state statute of limitations governing personal injury claims. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 280 (1985) ("[Section] 1983 claims are best characterized as personal injury actions."), superseded on other grounds by 28 U.S.C. § 1658(a) as recognized in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-82 (2004). North Carolina has a three-year statute of limitations for personal injury actions. N.C. Gen. Stat. § 1-52(5). Thus, North Carolina's three-year statute of limitations governs Plaintiff's claims. See, e.g., Franks v. Ross, 313 F.3d 184, 194 (4th Cir. 2002); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996).

Although the limitations period for claims brought under § 1983 is borrowed from state law, the time for accrual of an action is a question of federal law. Wallace, 549 U.S. at 388; Brooks, 85 F.3d at 181 (citation omitted). Generally, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. Brooks, 85 F.3d at 181. In this case,

---

[1] Officer Seibert is not named as a defendant in the Complaint.

Plaintiff became aware of the alleged injuries by Seibert and Davis on the day they occurred, February 24, 2008. Consequently, the statute of limitations had run by February 24, 2011.[2]

Additionally, to the extent Plaintiff is attempting to sue Defendants Theodis Beck, Boyd Bennett, Sid Harkelroad, and Randy Teague[3] in their supervisory capacities for the alleged actions of Seibert and Defendant Davis, there are additional grounds barring his recovery. First, the Eleventh Amendment protects state employees acting in their official capacities from suits for damages. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Next, the doctrine of respondeat superior generally does not apply in § 1983 claims. Monell v. Dep't of Soc. Services, 436 U.S. 658, 694 (1978). Plaintiff has not alleged that any of the aforementioned officials personally were involved in the dining hall or penny toss incidents or that their supervisory actions with respect to Seibert and Davis violated constitutional norms. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (administrators liable in their individual capacities only for their personal or supervisory wrongdoing). Therefore, even if his claim was not time-barred, he could not recover monetary damages from these defendants. Id.

**B. Grievance Process**

Plaintiff alleges that Defendants Corpenning (FNU), Linda Paquin,[4] Randy Teague, Eileen Cochrane, Sid Harkelroad, Boyd Bennett, and Theodis Beck failed to conduct an adequate investigation into the dining hall and penny-toss incidents. However, the "Constitution creates no

---

[2] A prisoner's § 1983 action commences when he delivers his complaint to prison authorities for mailing. Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735-36 (4th Cir. 1991). Although it is unclear when Petitioner delivered his § 1983 complaint to prison officials, he did not sign it until March 3, 2011, outside the statute of limitations period. (Doc. No. 1 at 7).

[3] Defendant Randy Teague was improperly named as Randy Tiggs.

[4] Defendant Linda Paquin was improperly named as Ms. Pengin.

entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted). Even assuming that Defendants violated North Carolina Department of Correction (hereinafter "DOC") grievance procedures, such actions standing alone do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741, 750-52 (1978); see also Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) ("Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures[.]"); Morris v. City of Danville, 744 F.2d 1041, 1048 n.9 (4th Cir. 1984) (recognizing that the "mere fact that a state agency violates its own procedures does not, ipso facto, mean that it has contravened federal due process requirements").

Plaintiff's claims for monetary damages and declaratory relief based on Defendants Corpenning, Paquin, Teague, Cochrane, Harkelroad, Bennett, and Beck's alleged failure to investigate his grievance against Officer Seibert and Defendant Davis fail to state a claim upon which relief may be granted for violation of the Due Process Clause. Therefore, these claims will be dismissed pursuant to § 1915A(b)(1).

**C. Retaliatory Transfer**

As previously noted, Plaintiff claims that he was transferred to LCI in retaliation for filing his grievance against Officer Seibert and Lt. Davis. To succeed on his claim, Plaintiff must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Although the Fourth Circuit has not issued a published opinion on the question of whether the

5

filing of a grievance by a prisoner implicates the First Amendment,[5] other circuits have held that prison officials may not retaliate against a prisoner for filing grievances. See e.g., Hill v. Lapin, 630 F.3d 468, 472 (6th Cir. 2010) (recognizing a prisoner's "undisputed First Amendment right to file grievances against prison officials on his own behalf"); Gee v. Pacheco, 627 F.3d 1178, 1189 (10th Cir. 2010) (recognizing filing of grievance as a protected First Amendment right); Haynes v. Stephenson, 588 F.3d 1152, 1155-56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); Bibbs v. Early, 541 F.3d 267, 272 (5th Cir. 2008) (holding plaintiff stated a cognizable claim where prison officials allegedly subjected him to sub-freezing temperatures for four consecutive nights in retaliation for filing grievances); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."); Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005) (holding plaintiff stated a claim where he alleged prison officials destroyed property, threatened transfer, and assaulted him in retaliation for filing grievance and lawsuit); Gill v. Pdilypchak, 389 F.3d 379, 384 (2d Cir. 2004) (holding plaintiff stated a claim where prison officials allegedly issued false misbehavior reports and sentenced him to three weeks in keeplock in retaliation for using grievance system).

To state a First Amendment § 1983 retaliation claim, a plaintiff must establish three elements: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal

---

[5]In an unpublished opinion, a three-judge panel of the Fourth Circuit recognized that a prisoner's claim that he was transferred in retaliation for his numerous grievances implicated the First Amendment rights of free speech and to seek redress of grievances. Gullet v. Wilt, 869 F.2d 593, 1989 WL 14614, at *2 (4th Cir. 1989).

relationship existed between the plaintiff's speech and the defendant's retaliatory action. Suarez Corp. v. McGraw, 202 F.3d 676, 685-86 (4th Cir. 2000) (citations omitted). As to the first element, the Court will assume that Plaintiff's use of the grievance process was protected under the First Amendment.

Turning to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks and citations omitted). Generally, transfer to the general population of another prison alone is not an adverse action upon which a retaliation claim may be based. See Smith v. Yarrow, 78 F. A'ppx 529, 543 (6th Cir. 2003) (unpublished) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.") (internal quotation marks and citations omitted)). However, "a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." Hill, 630 F.3d at 474-75 (holding that threat to transfer plaintiff to the lock-down unit at another prison constitutes an adverse action because the transfer would foreseeably lead to a living environment with more restrictions and fewer privileges than in the prison's general population); see also Gee, 627 F.3d at 1189 (recognizing that transfer to out-of-state super-max prison would chill a person of ordinary firmness from continuing to engage in activity protected by the First Amendment). Plaintiff does not allege that his transfer to LCI had any foreseeable adverse affect on him other than that he was unable to complete a computer class that he had been taking at MCI. However, such a consequence is de minimis. See Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) (holding that inmate must allege more than de minimis or inconsequential act to support

7

retaliation claim); see also Bridges v. Gilbert, 557 F.3d 541, 554-55 (7th Cir. 2009) (holding that a single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action); Walker v. Bowersox, 526 F.3d 1186, 1190 (8th Cir. 2008) (finding two allegedly retaliatory acts de minimis).

Even if the Court was to assume that the transfer to LCI was an adverse action that would likely deter a person of ordinary firmness from the future exercise of his First Amendment rights, Plaintiff has failed to show a causal connection between the filing of his grievance and the transfer. Suarez Corp. Industries, 202 F.3d at 686. Simply alleging retaliation is not sufficient to state a claim for relief. On the contrary, Plaintiff must come forward with specific evidence "that but for the retaliatory motive, the complained of incident . . . would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed. Adams, 40 F.3d at 74.

Here, the only evidence Plaintiff offers of retaliation is that he filed a grievance on March 7, 2008, and that on April 28, 2008, he was transferred to LCI. However, "temporal proximity" between an inmate's protected activity and the allegedly retaliatory official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993). The facts asserted by Plaintiff do not sufficiently tie his act of filing a grievance to the transfer that he avers was instituted to retaliate for the grievance. Accordingly, his Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Finally, "in order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine

8

of respondeat superior has no application under this section.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Plaintiff has failed to allege that any of the named defendants were involved personally in his transfer or that any of those in a supervisory position knew of the retaliatory nature of the transfer and acquiesced to it.[6] As time remains under the statue of limitations for Plaintiff to file a complaint with additional facts to support his allegation of a retaliatory transfer, this claim shall be dismissed without prejudice.

### D. Defendants Vickers and Hyatt

Although he names Vickers (FNU) and Hyatt (FNU) as defendants in this case, Plaintiff has not alleged any action by either defendant that could have resulted in a constitutional injury. He identifies Hyatt as the individual who taught his computer programming class. However, Plaintiff does not identify Hyatt as a state actor, and his allegation that Hyatt "maliciously and sadistically" gave him a passing grade for a class that he did not attend does not implicate any constitutional or statutory right. As for Vickers, the Complaint contains no mention of him or her other than in the caption. Therefore, both Hyatt and Vickers shall be dismissed as defendants.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants Vickers (FNU) and Hyatt (FNU) are dismissed and should be removed from the caption of this case;

2. The Clerk shall add Capt. Corpenning (FNU), Linda Paquin, Lt. Davis (FNU), and Eileen Cochrane to the Docket as Defendants and correct the spelling of Defendant Randy Tigg's name to Randy Teague;

---

[6] The Court notes that DOC officials were still conducting their review of Plaintiff's grievance when he was transferred. (Doc. No. 1-1 at 1: Administrative Remedy Procedure Step Three, May 13, 2004).

9

3. Plaintiff's claim alleging personal injury and civil rights violations stemming from the dining hall and penny-toss incidents are time-barred and dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim;

4. Plaintiff's claim alleging an inadequate grievance process is dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim; and

5. Plaintiff's claim alleging a retaliatory transfer is dismissed without prejudice.

Signed: March 25, 2011

Robert J. Conrad, Jr.
Chief United States District Judge